EDWARD R. OLIVER *et al.*

*v.*

REVILO OLIVER.

*Filed at Ottawa May 19, 1884.*

1. EVIDENCE—*to prove a deed a forgery—clear proof required.* An allegation in a bill filed to set aside a certain deed as a forgery,—that the grantor executed and acknowledged the deed, and after its execution and delivery the defendant erased the name of the complainant, the grantee therein, and inserted his own name in its place,—is one that the complainant is bound to establish affirmatively by clear and convincing proof.

2. In this case it was alleged that the defendant took a deed of land, made to his son, to have the same recorded, and fraudulently erased his son's name and inserted his own as grantee, and then had the same recorded, after which it was lost. The court reviews the evidence, and holds that it fails to sustain the allegation as to the alteration or forgery.

APPEAL from the Circuit Court of Livingston county; the Hon. FRANKLIN BLADES, Judge, presiding.

Mr. C. C. STRAWN, for the appellants.

Mr. A. E. HARDING, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill brought by Revilo Oliver, in the circuit court of Livingston county, to set aside a deed executed by Amorretta Oliver, purporting to convey a certain tract of land in Livingston county, consisting of four hundred acres, to Franklin Oliver, Sr., which was executed on the 25th day of October, 1879, and recorded October 28, 1879. The complainant was the son of Franklin and Amorretta Oliver, and the latter was the divorced wife of Franklin Oliver. . The four hundred acre tract of land embraced in the deed had been obtained by Amorretta Oliver from Franklin Oliver, her former husband, in the divorce proceedings. The consideration named in the deed was $10,000. On the same day the deed was executed, Franklin Oliver, Sr., conveyed, by quitclaim deed, to Amorretta Oliver, section 33 and other lands, amounting to eight hundred acres, in the same township where the four hundred acre tract is located, the consideration named in the deed being $10,000. It is alleged in the bill that the four hundred acre tract of land was conveyed on the 25th day of October, 1879, by Amorretta Oliver, to the complainant, Revilo Oliver, and that Franklin Oliver took the deed to carry it to the recorder's office for record, and that he erased complainant's name as grantee, and inserted his own name, and then left the deed for record. On the other hand, it was claimed by the defendants in the bill that Franklin Oliver conveyed section 33, and the other lands named in the deed, to Amorretta Oliver, in exchange for the four hundred acres which she conveyed to him.

The evidence introduced on the hearing was very con-
flicting, but the circuit court rendered a decree in favor of
complainant, as prayed for in the bill.    Amorretta Oliver
testified that the deed was made to her son, the complainant.
The complainant testified that he purchased the land of his
mother; that he wrote the deed, and his name was inserted
as grantee.    The deed was acknowledged before Minnerly,
a justice of the peace.    He testified that he did not read
the deed, but from the conversation had between the three
(Franklin, Amorretta and Revilo Oliver,) he supposed the
deed was made to complainant.    Wilson testified that Frank-
lin Oliver came to his house one day and handed him a deed,
which he read, and it was a deed from Amorretta Oliver to
Revilo Oliver for four hundred acres of land,—the land in
question.    Sears testified that he had frequent conversations
with Franklin Oliver, who told witness that he had traded
Amorretta section 33, with a mortgage on it, for which he
was to have the four hundred acres where they lived, and
"he thought they were playing sharp on him,—that they had
deeded the four hundred acres; I don't know whether she
deeded it to him or Revilo first; she had deeded it to Revilo,
and he thought their calculation was for Revilo to get his
deed on record before he did, but he was too old, or too sharp,
and got his deed on record first."    Elizabeth Webster testi-
fied that she had a conversation with Franklin Oliver, in
which he said that he was as competent to do business as he
ever was; "that he was smart enough to beat or cheat the
old woman and Revilo out of their land, and he laughed
about it exultingly."

The complainant testified that he was smart enough to beat or cheat the old woman and Revilo out of their land, and he laughed about it exultingly."

This, in substance, was the evidence relied upon by com-
plainant.    On behalf of the defendants, Franklin Oliver tes-
tified that the deed was executed in Mrs. Oliver's house; she
delivered it to him; he was grantee therein; Revilo was not
mentioned in it; the deed was taken from him when he was
robbed; he gave Mrs. Oliver his claim on section 33 and

other lands, for the four hundred acres; she gave him no money; Minnerly wrote the deed. Heald testified that he had a conversation with the complainant. He said his mother had traded four hundred acres for section 33, with his father. Gillespie testified that complainant told him that his mother had traded the four hundred acres for section 33, in October, 1879. William Turner testified that he saw the deed in November, 1879; that the deed had no appearance of having been changed; that Franklin Oliver's name in the deed appeared to be in the same handwriting as the balance of the deed. Cordeal recorded the deed, and he and Payson both testified that they examined the deed after it was filed in the clerk's office for record; that there were no erasures or interlineations of any kind as to the names in the deed. W. G. McDowell, who was attorney for Mrs. Oliver in obtaining the divorce for her, and who procured the four hundred acres of land as alimony for her, testified that he had cautioned her not to deed the land away, or sign any papers whatever concerning it, and when he heard she had traded the land away he was led to examine it in the recorder's office. As to the appearance of the deed he testified: "I examined it carefully; there was no interlineation, erasure, or other change in the deed, that I could discover."

The record contains other evidence on minor points or collateral issues, but we have given the substance of the evidence bearing upon the controverted question in the case,— whether the deed in question was made to Franklin Oliver, Sr., or to his son, Revilo, and the name of the latter subsequently erased and the name of Franklin inserted. Had the deed been produced on the trial for inspection, much of the difficulty involved in the question would have been obviated; but after the deed was recorded and returned to Franklin Oliver, as appears from the evidence, he was robbed, and the deed, with other papers, was carried away, and could not be produced.

The charge in the bill, as will be observed, is one of forgery. It is conceded on all hands that Amorretta Oliver executed and acknowledged the deed; but the allegation of the bill to be proven is, that after the deed was executed and delivered, Franklin Oliver, Sr., erased the name of the grantee, Revilo Oliver, and inserted his own name as grantee. This proposition was one which the complainant was bound to establish affirmatively by the evidence, and one, too, which should be established by clear and convincing proof, before relief should be granted. Has that been done in this case? The complainant and his mother, who may be regarded as the immediate parties to the transaction on one side, testify that the deed was made to complainant, while Franklin Oliver, the party on the other side, denies that the deed was made to complainant, and testified that it was made to him. Thus far there seems to be no preponderance. The evidence of the only other person present when the deed was executed, (the justice of the peace,) throws but little light on the transaction. He did not read the deed, and can not say who the grantee named in the deed was. From the conversation he understood that complainant was the purchaser. But this evidence we do not regard as having much bearing on the question. Had the justice read the deed, and been able to testify to whom it was made, his evidence might have been a controlling factor in the case; but such is not the fact. Franklin Oliver says he deeded section 33 and other lands to Amorretta Oliver, on the same day, for the four hundred acre tract. In this he is corroborated by the fact that a deed was executed by him to her for the lands he mentioned. True, Amorretta and Revilo testify that she bought those lands of Franklin, and paid him in cash $1500 for the same; but this he denies, and they are not corroborated by any other evidence in the case. On the other hand, several witnesses testify to admissions of the complainant, to the effect that the four hundred acres of land was exchanged with

Franklin Oliver for section 33, and other lands conveyed in the deed made by Franklin.

But the strongest evidence in the case, in our judgment, is the testimony of the witnesses who saw the deed, and examined it after it was filed for record. Cordeal, Payson, Turner and McDowell, all disinterested and reliable witnesses, testify that they saw and examined the deed, and that there were no interlineations, erasures or alterations in the names of the parties grantor and grantee, and that the name of Franklin Oliver, Sr., appeared as grantee. It will be remembered that the deed was executed on October 25, 1879. On the 28th of the same month it was filed for record. If Franklin Oliver, who was at the time over ninety-three years old, had, within the three days that the deed was in his possession, erased the name of the grantee and inserted his own name, some trace of the forgery would without doubt have appeared in the deed. These witnesses examined it closely, especially McDowell and Cordeal, and they were in the habit of handling deeds and instruments of writing relating to real estate, and if the crime had been committed which is alleged, it seems incredible that these men failed to detect some evidence of it. It is true that the complainant called one Wilson as a witness, who says he saw the deed the next day after it was executed, and that the name of complainant appeared as grantee. While the memory of this witness is clear and definite in reference to matters in favor of the complainant, on cross-examination his memory in relation to other matters occurring at the same time seems to be much at fault. He had no interest in the matter. At the time he says Franklin Oliver showed him the deed, there was nothing to direct his attention particularly to the person named as grantee in the deed, and it seems probable he was mistaken. At all events, if the deed was as he states, and was changed during the next two days, the witnesses who examined it at the recorder's

office would have been likely to detect the alteration in the instrument.

But we do not deem it necessary to refer to other evidence. We have carefully examined all the evidence contained in the record, and we do not regard it sufficient to sustain the decree. The evidence is not of that clear and convincing character that it should be to overturn a deed which passes the title to real property.

The decree of the circuit court will be reversed, and the cause remanded for further proceedings consistent with this opinion.

*Decree reversed.*