EDWARD R. OLIVER

*v.*

REVILO OLIVER.

*Filed at Ottawa January 25, 1887.*

EVIDENCE—*to establish that a deed is a forgery.* In this case, the facts and circumstances relied on to show that a recorded deed was a forgery, are stated, and held insufficient to invalidate the deed as recorded.

WRIT OF ERROR to the Circuit Court of Livingston county; the Hon. N. J. PILLSBURY, Judge, presiding.

Mr. C. C. STRAWN, for the plaintiff in error:

It requires more than a preponderance of evidence to justify a decree in setting aside a deed as a forgery. Where a criminal offence is charged in the pleadings in a civil case, the offence charged must be proved beyond a reasonable doubt. *Sprague* v. *Dodge*, 48 Ill. 142; *McConnel* v. *Insurance Co.* 18 id. 228; *Crandall* v. *Dawson*, 1 Gilm. 556; *Harbison* v. *Shook*, 41 Ill. 141; *Chaffee* v. *United States*, 18 Wall. 516.

Courts of equity have repeatedly refused to sustain actions to set aside deeds for fraud, unless there was proof beyond a reasonable doubt. *Gould.* v. *Gould*, 3 Story, 516; *Phettiplace* v. *Sayles*, 4 Mass. 312; *Purcell* v. *Miner*, 4 Wall. 513; *Kerr* v. *Russell*, 69 Ill. 666; *Russell* v. *Baptist Theological Union*, 73 id. 337.

Messrs. HARDING & MURDOCK, and Mr. THOMAS F. TIPTON, for the defendant in error.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This case is now before us for the second time. The former opinion, filed May 19, 1884, is in 110 Ill. 119. Since the reversal and remanding of the cause, an amended bill has been filed, alleging that the original deed, claimed to have been executed by Amoretta Oliver to Revilo Oliver, has been discovered, and charging, that the recorded deed from Amoretta Oliver to Franklin Oliver Sr. is a forgery. The question involved is purely one of fact. The record is very voluminous. We shall not attempt to analyze, compare and discuss the testimony of the numerous witnesses on both sides. We have examined it all, and weighed it carefully, and shall only give, in general terms, the conclusion, which we have reached. We are of the opinion, that the recorded deed is not proven, by a clear preponderance of the evidence, to have been a forgery.

June 11, 1879, Amoretta Oliver obtained a decree of divorce from Franklin Oliver Sr., her husband, and was awarded the

400 acres in controversy, as alimony. The defendant in error, Revilo Oliver, is their son. John L. Oliver, hereafter mentioned, is another son. In 1879 Franklin Oliver Sr. was ninety-three years old. A bitter animosity existed between himself on the one side, and his wife and her two sons, Revilo and John on the other. The record teems with exhibitions of cruelty and hatred, springing from an unnatural family feud.

On October 21, 1879, Franklin had some negotiations with his former wife with reference to an exchange of the 400 acres he had given her for another tract, owned by him, which contained 765 acres. On that day, they had a meeting at her house, at which Minnerly, a justice of the peace, and the main witness for defendant in error, was present. Minnerly swears, that he made out two deeds, one from Franklin to Amoretta for the 765 acres, and one from Amoretta to either Franklin, or two nieces of his in New Jersey, for the 400 acres. The negotiations, however, fell through. Mrs. Oliver refused to carry out the exchange. Franklin Oliver was angry about it, and threatened, that he would set aside the divorce, if his former wife should not execute the deed to him of the 400 acres.

On October 25, 1879, a second meeting took place, at which Franklin, Amoretta, Revilo and Minnerly were present. Minnerly states, that, when he came to the house on this second occasion, Franklin said to him: "I think it will not be a failure this time; we have agreed and there will be no controversy." It is undisputed, that two deeds were then executed. Franklin made a deed to Amoretta, conveying to her 845 acres, having added an 80-acre tract to the 765 acres, already mentioned. Franklin Oliver who has since deceased, swore, on the former hearing, that Amoretta then executed to him, in exchange for the 845 acres, a deed conveying to him the 400 acres, and that he took the last named deed away with him, and, on October 28, 1879, went to Pontiac and recorded it. On the other hand, Amoretta Oliver, and

her son, Revilo, swear, that the deed of the 400 acres, which she then executed, was to Revilo Oliver and not to Franklin Oliver. The°only question in the case is: Did Amoretta Oliver make a deed·of the 400 acres to Franklin Oliver or to Revilo Oliver?

The records of Livingston county show, that a deed from Amoretta to Franklin Oliver, conveying the 400 acres, was recorded in the recorder's office of that county on October 28, 1879. After its record and on or about October 30, 1879, it was delivered to Franklin Oliver. On the morning of January 3, 1880, Franklin Oliver was found in the house, in which he lived alone, in his bed with his hands and his feet tied and a gag in his mouth. His clothes and his papers were scattered upon the floor and his trunk had been rifled. He swears, that, at this time, the deed, which he had recorded, was stolen from him. The evidence points very strongly to Revilo Oliver, as the person, who committed this outrage upon his aged father.

The evidence, introduced upon the first hearing, has already been commented upon in our former opinion. Upon the second hearing, a deed of the 400 acres, dated October 25, 1879, signed by Amoretta Oliver, and purporting to have been acknowledged before A. B. Minnerly, justice of the peace, on October 25, 1879, running to Revilo Oliver, as grantee, was introduced in evidence, as the original deed, that was executed by Amoretta on October 25, 1879. It is argued, that,.as she then made this deed to Revilo and as she made no other deed of the 400 acres except this, the deed to Franklin Oliver, which was recorded, must have been a forgery. The deed, thus produced, comes attended with so many circumstances of suspicion, that it can not be allowed to weigh against the solemnity of a public record.

It shows upon its face, that it was never recorded. Revilo Oliver swears, that he drew it, and the proof tends to show, that the writing in the body of it is in his handwriting. The

signature is Mrs. Oliver's. Revilo and his mother were interested parties. The certificate of acknowledgment has no seal. It is signed "A. B. Minnerly J. P." It 'is a printed blank, and the few written words which it contains appear to be in Minnerly's handwriting. Minnerly has left the State of Illinois and is now living in Texas. The testimony introduced by defendant in error to explain the loss of this document, is not satisfactory.

Revilo Oliver says, that, after the deed was executed and delivered to him on October 25, 1879, he laid it down on the table in the room, where his father and mother then were, and went to the timber. Mrs. Oliver says, that her husband, who remained in the room some time after Revilo left, wanted the deed and she let him take it, and he said he would carry it to Pontiac and have it recorded. It is difficult to understand, why Franklin Oliver should be so desirous of recording a deed, conveying to a son, between whom and himself there existed such a feeling of hostility, that very tract of 400 acres, which he had been so anxious to get on October 21, in exchange for the 765 acres. He did not take away the deed of 845 acres, which he had made to his wife, to have that recorded. She recorded it herself a few days after. He could have had no possible interest or object in carrying off and agreeing to record a deed to Revilo. The theory of an exchange of lands, and the conveyance of the 400 acres to Franklin in pursuance of such exchange, explain the consideration, which the latter received for deeding away the 845 acres. Nothing else furnishes an adequate explanation of his parting with the 845 acres, in view of the state of feeling, which then existed between the parties.

McDowell, an attorney, swears, that Revilo once asked him, "if he could not get the old man's land away from him by having two deeds, one over the other in some way, when the old man read the same, and then, when the old man came to sign the same, slip it or change it, so that he would in fact

sign a deed different from the one he had read." Sears swears, that old Mr. Oliver once said to him, in speaking of the exchange of the 845 acres for the 400 acres, that "he thought they were playing sharp on him, that she had deeded 400 acres * * * to Revilo, and he thought their calculation was for Rivilo to get his deed on record first." If two deeds, each conveying the 400 acres, were made out, one to Revilo and one to the old man, with the intention of showing him the latter, in order to get him to convey the 845 acres, and then of substituting the former in its place, the plan would seem to have miscarried, as the old man took possession of the deed to himself.

The testimony introduced by defendant in error to explain the mode, in which he recovered the deed to himself, which, he says, that his father carried off on October 25, 1879, can not be regarded as conclusive upon that subject. John L. Oliver, who lived in the same house with his mother and his brother Revilo, and was interested on their side of the controversy, says, that, in June 1880, his father requested him to go to his trunk and get a certain letter; that, while looking for the letter, he found a package of papers, and, upon examining them, discovered this deed to Revilo; that he took the deed from the package, and kept it in his own possession, without saying anything to Revilo or his mother about it, until November 1884. His testimony seems wholly improbable. During these four years, he lived three years in the house with his mother and brother; the original bill was filed in this cause in September 1880; he was among the parties to the litigation during the whole of its progress. He confesses, that he told falsehoods in regard to his possession of the deed. He swears, that, in the summer of 1880, his father asked him several times, "if I didn't get a paper out of his trunk and I told him no." He again says: "A good many asked me if I knew anything about the deed and I always told them I didn't know anything about it, the same as I told my

father." Several witnesses swear, that, after the production of the deed in question, they asked John L. Oliver about it, and he always denied that he ever had or saw any such deed, and claimed that he knew nothing about any deed to Revilo.

The memory of Minnerly in regard to the transaction is so much at fault, that his testimony throws but little light upon it. In regard to his statements, as given upon the first hearing, we made the following observations in *Oliver et al.* v. *Oliver*, 110 Ill. 119 : "The evidence of the only other person present, when the deed was executed (the justice of the peace) throws but little light on the transaction. He did not read the deed and can not say, who the grantee named in the deed was. From the conversation he understood, that complainant was the purchaser. But this evidence we do not regard as having much bearing on the question." His deposition has been taken in Texas, since the case was last before this court, and he now says, that he "never took the acknowledgment of but two deeds, one to Revilo from his mother, and one from Oliver Sr. to Mrs. Oliver." In this, however, he is evidently mistaken for the following reasons :

The original bill charged, that the deed, recorded by Franklin Oliver Sr., was the same deed, which had been executed by Mrs. Oliver to her son, Revilo, and that, before recording it, Franklin had erased Revilo's name and inserted his own, so as to make himself appear as the grantee in the record. The amended bill takes a different position. It charges, that the whole of the deed, which was recorded, was a made up and forged deed, and that the genuine deed to Revilo has been discovered. It is now admitted by defendant in error, that the deed to Revilo, which John L. Oliver claims to have found, and the deed, which was placed on record by old Mr. Oliver, were two separate and distinct instruments. Mr. Cordeal, who had done the recording in the circuit clerk's office at Pontiac for seven years, and is an entirely disinterested witness, swears, that he recorded the deed, left with him by

old Mr. Oliver on October 28, and examined it critically, and that the certificate of acknowledgment, appended to it, was in Minnerly's handwriting; that he had seen Minnerly write and was acquainted with his handwriting.

We do not think, that defendant in error has established the charge, made in his amended bill, by a preponderance of the evidence.

The decree of the circuit court is reversed, and the cause is remanded for further proceedings in conformity with this opinion.

*Decree reversed.*