## Isabella B. Roberts v. Ella Broughton Woods, May Broughton and Ben Broughton et al.

1. APPELLATE COURT JURISDICTION—*Where a Freehold is Involved.*— A bill to set aside a conveyance involves a freehold, and although the Appellate Court has no jurisdiction to review the action of the court in refusing to set aside such conveyance, it has the right to inquire into the *bona fides* of the transaction, as far as it involves the question of the validity of notes forming a part of the purchase, where their validity, as well as the validity of the conveyance, are questions so intimately

connected with each other, that separate relief as to either can not well be granted.

2. EXPERT TESTIMONY—*Unreliableness as to Signatures.*—The genuine signatures of the same person vary greatly, according to the circumstances and conditions under which they are written, and experts on handwriting can always point out differences upon which to base an opinion as to their genuineness.

3. CRIMINAL OFFENSES—*Proof of, When Involved in Civil Cases.*—Where a criminal offense is charged in the pleadings of a civil case, it is not necessary to prove the charge beyond a reasonable doubt.

4. PRESUMPTIONS—*Possession of Notes.*—Where notes are in the possession of a wife at the death of the husband, and the proofs do not show that they belonged to his estate, the presumption is that they belong to her.

**Bill to set Aside a Conveyance,** and other relief. Trial in the Circuit Court of DeKalb County; the Hon. GEORGE W. BROWN, Judge, presiding. Decree for complainant; appeal by defendant. Heard in this court at the December term, 1898. Affirmed in part, reversed in part, and remanded with directions. Opinion filed May 19, 1899.

JONES & ROGERS and CHARLES WHEATON, attorneys for appellant, contended that where a criminal offense is charged in the pleadings in a civil suit, such offense must be proved beyond a reasonable doubt, and cited Harbison v. Shook, 41 Ill. 147; Sprague v. Dodge et al., 48 Ill. 142; Germania Fire Ins. Co. v. Klewer, 129 Ill. 612; Riggs v. Powell, 142 Ill. 459; Grimes v. Hilliary, 150 Ill. 141.

The value of expert testimony as to handwriting is but slight. It is not of a very high order. Cowan v. Beal, 1 McArthur (D. C.), 270; Borland v. Walrath, 33 Iowa, 130; Whittaker v. Parker, 42 Iowa, 585.

CARNES & DUNTON and A. G. KENNEDY, attorneys for appellees.

It is not necessary in a civil case to prove a criminal offense charged in the pleadings beyond a reasonable doubt. There is a conflict of authority on that question. Germania Fire Insurance Co. v. Klewer, 129 Ill., on page 612.

Grimes v. Hilliary, 150 Ill. 141, contains the last expression of our Supreme Court on this question. The court said, on page 146:

"It has been held that where, under the pleadings, it becomes necessary to the maintenance of the plaintiff's cause of action or the defendant's defense to show that the opposite party has been guilty of a criminal offense, such offense must be proved beyond a reasonable doubt. (Germania Ins. Co. v. Klewer, 129 Ill. 612; McConnel v. Mutual Ins. Co., 18 Id. 228; Crandall v. Dawson, 1 Gilm. 556; Sprague v. Dodge, 48 Ill. 142.) If this rule is to be adhered to, in respect of which we express no opinion, the case at bar is clearly distinguishable from the cases cited. It does not follow that because an element may have entered into the act which would have rendered it indictable as a crime, but which is not alleged or necessary to be proved to authorize a recovery in the civil action, the proof must be made beyond a reasonable doubt." Riggs v. Powell, 142 Ill. 453, and cases *supra*.

At most the complainants were only compelled to support their charge of forgery by a clear preponderance of proof. Riggs' Exr. v. Powell, 142 Ill. 453.

While forgery is charged in the amended bill there are other charges in the bill as amended under which appellant might be held to account for the certificates in question without involving criminality of appellant, therefore the case may be said to fall within the rule that clear proof would be required, not proof beyond a reasonable doubt. Sprague v. Dodge et al., 48 Ill. 142; Shephard v. Royce, 71 Ill. App. 321.

Even on the question of proving the allegation of forgery in the amended bill, "clear and convincing proof only is necessary." Oliver et al. v. Oliver, 110 Ill. 119.

MR. JUSTICE CRABTREE delivered the opinion of the court.

Appellees, Ella Broughton Woods, May Broughton and Ben Broughton, are three of the children and heirs at law of Chauncey W. Broughton, deceased, who died May 8, 1893, leaving a last will and testament disposing of a large amount of real and personal estate, and in which he named appellant, his wife, and Ben Broughton, his son, as the executrix and executor thereof. Chauncey W. Broughton was married three times. As issue of the first marriage there was one son, Charles P. Broughton, usually spoken of

in the testimony as Preston Broughton. Appellees were the only surviving issue of the second marriage, deceased being married to appellant when appellees were of tender years, said Chauncey W. Broughton being then fifty-seven years old and appellant under thirty years old. By the third marriage there were two sons, Charles B. Broughton and Chauncey W. Broughton, who were defendants below, and are minors under the age of twenty-one years. By his said will deceased gave to his son Charles P. Broughton the sum of $1,000, and to his wife (appellant), his children, the three appellees and the two minors, he gave, devised and bequeathed all the remainder of his property and estate, both real and personal; appointed appellant sole guardian of his minor children, and directed that the real estate should remain undivided and as a home for the six legatees and devisees, naming them as above stated. This will was duly admitted to probate in DeKalb county, and appellant, together with appellee Ben Broughton, were duly qualified as executors. Certain notes belonging to the estate were divided up among the legatees, but as there is no controversy concerning them they need not be further considered. They amounted to something like $85,000. Certain of the notes being considered of doubtful value, were retained by appellant, with the understanding that she would account for them when collected. Appellant seems to have had the principal care and management of the estate, her co-executor, Ben Broughton, appearing to have had little to say or do about its settlement.

The real estate consisted of about 832 acres of farm lands, and constituted the farm on which deceased resided with his family at the time of his death, appellant, appellees, and the two minor children being such family. For about one year after testator's death, these parties continued to reside together on the farm, which remained undivided and was worked and carried on in common for the supposed benefit of each and all of them. On August 1, 1884, appellees entered into an agreement, with appellant acting for herself and her wards, Charles B. and Chauncey W. Broughton,

whereby appellant agreed to waive the award of $1,846, set off to her by the appraisers, and to purchase the interest of appellees in the real estate at a price to be fixed by J. D. Roberts and J. H. Lewis as arbitrators; and appellees agreed to allow on the purchase price certain notes which appellant claimed she held against the estate; the balance of the purchase money to be paid in cash. Appellees agreed to sell at the price to be fixed by the arbitrators, and it was further agreed that this arrangement was to be a final settlement of all notes that appellant held against the estate. This agreement was in writing, signed by appellees, and also by appellant as guardian for the minors. In pursuance of this agreement the arbitrators came together and fixed the price of the land at $47,000, one-half of which belonged to appellees. On the settlement appellant produced notes which she claimed to hold against the estate, which, with the interest added, amounted to $17,000, one-half of which was allowed in payment of one-half the purchase price of the land to be paid to appellees.

Among the securities which had been owned by Chauncey W. Broughton in his lifetime, were four certificates of deposit issued by the DeKalb National Bank for $2,000 each, aggregating the sum of $8,000; six certificates of deposit issued by the Waterman Bank of Illinois aggregating $6,680; and fourteen certificates of deposit issued by the Barb City Bank of DeKalb, aggregating $19,500; being in all the sum of $34,180 in certificates of deposit of cash in these several banks. Claiming that all these certificates, and the moneys represented thereby had been given to her by her husband, Chauncey W. Broughton, in his lifetime, appellant collected the same and converted the proceeds to her own use, refusing to account therefor in any way to the estate or to appellees.

The bill in this case was filed by appellees against appellant and John D. Roberts (with whom she has since intermarried), as well as against the minors Charles B. and Chauncey W. Broughton, for the purpose of attacking the *bona fides* of said land transaction and the notes allowed in

payment, and also seeking to compel appellant to account for the proceeds of said certificates of deposit; it being alleged that the assignments thereof under which she claimed title thereto were forgeries. As to the land transaction it is alleged that by collusion between appellant and said Roberts, appellees were deceived and defrauded. That said Roberts, although selected as an arbitrator by appellees, and professing to be their friend and to be acting in their interest, was in fact in secret collusion with appellant, whom he afterward married, to cheat and defraud appellees. That the price fixed on the land was low and inadequate, and not a fair price, and that the land was in fact worth more by ten dollars per acre than the price fixed by the arbitrators and paid by appellant. That appellees were deceived by appellant as to the amount of the notes she claimed to hold against the estate, which it is claimed she had represented to be some five or ten thousand dollars instead of the $17,700 which she afterward produced. That while some of the notes may at one time have been valid, they had been paid by their father before his death and were supposed by him to have been destroyed, and they aver they would never have allowed them in settlement had it not been for the advice of Roberts, whom they supposed then to be acting in their interests.

The bill also attacks the conveyance of a certain eighty acre tract of land made by testator in his lifetime to appellant, and since sold by her for her own benefit, alleging that the conveyance to her was brought about by representations and promises that if the same were made to her she would treat the property as a part of the estate on final distribution and settlement; and that in consequence of such representations, and of the undue influence of appellant over deceased and exercised by her, such conveyance was not the voluntary act of the deceased and was void. There were also charges in the bill in regard to property on the farm on March 1, 1895, which it was alleged appellee and Roberts refused to account for, but as that matter has been all settled and adjusted, and is not involved in this appeal, the details thereof need not be further discussed.

Complainants below (appellees here) offered by their bill to surrender the compensation received by them for their deeds to appellant for the land conveyed to her, prayed that the deeds be declared void, that an accounting might be had, and for further relief. Appellant and Roberts filed their joint and several answer denying all the material allegations of the bill which charged them with fraud or conspiracy, or with any wrongful conduct whatever in their dealings with appellees concerning the settlement of said estate or the assets thereof, or said land transaction and the arbitration proceedings, or any other wrongs with which they were charged by the bill. Avers that the land sale was fair and *bona fide;* that $45 per acre was a fair value for the land; that the notes held by appellee against Chauncey W. Broughton were valid and just claims against his estate and could have been collected as such. Further avers that appellees at the time were satisfied with the result of the arbitration, and ratified the same by executing their respective deeds for their several interests in the land. That appellees had full knowledge of the notes at the time of the arbitration, the articles of which expressly provided that one-half the amount thereof should be deducted from the amount going to complainants. Appellant denies that she represented that such notes would only amount to $5,000 to $10,000. Appellant avers that deceased in his lifetime gave, assigned and delivered to her the certificates of deposits in the several banks in DeKalb county, which have been hereinabove referred to, whereby they became and were her separate property, and that complainants and the estate of the deceased had no interest in them. Further avers that at the time of his death she owned and held notes against said C. W. Broughton amounting to about $17,000, a copy of which notes she attached to her answer.

We have omitted to state in the proper place that by an amendment to the original bill complainants set out specifically the items as to the bank certificates of deposits, and distinctly charged that appellant, at some time unknown to complainants, forged the name of their father, Chauncey W.

Broughton, on the back of each of said certificates of the Waterman and DeKalb National Banks, and after the death of said Chauncey W. Broughton wrongfully withdrew from said banks the money so deposited and evidenced by said certificates, and converted the same to her own use and refused to account therefor to the complainants. It is further charged in the amendment that at the time of the death of said Chauncey W. Broughton there was deposited in the Barb City Bank at DeKalb, Illinois, in his name, and of his moneys, $19,500, evidenced by fourteen certificates issued by said bank therefor, and that without the knowledge or consent of said Chauncey W. Broughton, said certificates were by the cashier of said bank interlined so as to make them payable either to Chauncey W. Broughton or Belle B. Broughton, and that after the death of said Chauncey W. Broughton said Belle B. Broughton wrongfully collected the moneys due on said certificates and converted the same to her own use and refuses to account to the complainants therefor, or any part thereof. And it is further charged that appellant forged the name of Chauncey W. Broughton to two certain paper writings purporting to transfer said certificates of deposit from Chauncey W. Broughton to herself, and appearing to be witnessed by E. P. Orr and Henry H. Wann.

Appellant denied all and every of the allegations charging her with fraud and forgery, and avers that Chauncey W. Broughton signed his own name in his own handwriting in the presence of E. P. Orr and Henry H. Wann, and that they signed their own names as witnesses to said papers in the presence of said C. W. Broughton, and at his request, and that the signature of said C. W. Broughton to the said two paper writings are his genuine signatures, and that the signatures of the indorsement to her of the six certificates of deposit of the Waterman Bank, and the four certificates of the DeKalb National Bank, are each of them genuine signatures of the said C. W. Broughton. Avers that said C. W. Broughton was indebted to her in the full amount of the notes and interest allowed in settlement for

the real estate at the time of his death, and that the same were valid claims against his estate. Avers that the arbitration proceedings were entered into in good faith, and denies all conspiracy or confidential relations between herself and John D. Roberts in relation thereto, and again expressly denies all fraud and forgery charged in the bill and the amendment thereto. The minors answered by guardian *ad litem*, and the cause being at issue was referred to the master in chancery, to take and report proofs and findings. A large amount of testimony was taken by the master and returned into court, but no findings were made by him, and by agreement of both parties the cause was heard by the court upon the testimony taken by the master and also upon evidence produced and offered in open court upon the hearing. As to the matters in contention, the court found by its decree, that the sale of the land by appellees to appellant was a fair and *bona fide* transaction, and at a fair valuation.

2.   That the notes allowed in settlement of the land purchase held by appellant against the estate of C. W. Broughton, constituted a valid indebtedness for the amount claimed and allowed.

3.   That the arbitration proceedings were fair and valid.

4.   That the certificates of deposit upon the Barb City Bank of DeKalb for the sum of $19,500, were the property of said Isabella B. Roberts.

5.   Dismissed the bill for want of equity as to the defendant, John D. Roberts.

6.   Decreed that the certificates of deposit of the Waterman Bank for the sum of $6,680, and the four certificates of deposit upon the DeKalb National Bank, amounting to $8,000, were the property of the estate and should be accounted for as such, together with the interest thereon, from the 8th day of May, 1893, amounting in the aggregate to the sum of $18,417.23.

There was a further finding, that of the chattel property on the farm, or the proceeds thereof, there was due and owing from appellant to appellees, the sum of $2,819.68, to

which finding there was no exception, and appellant having paid appellees that amount, no further attention need be paid to this part of the decree.

It was further decreed that appellant pay the costs of the suit, and from so much of the decree as charged her with the amount of the Waterman Bank and the DeKalb National Bank certificates of deposit, appellant prayed an appeal to this court.

From those portions of the decree which found against them, appellees prayed an appeal to the Supreme Court, but it is said in the briefs of counsel that such appeal was never perfected.

The errors assigned by appellant, are that the court erred in finding that the certificate of deposit issued by the Waterman Bank and the DeKalb National Bank, amounting in the aggregate to the sum of $14,680, were the property of Chauncey W. Broughton at the time of his death, and decreeing that appellant should account for the same to his estate, and also in decreeing that she should pay the entire costs of the suit.

Appellees assign cross-errors as to the action of the court in decreeing against them and in favor of appellant as to the certificates of deposit issued by the Barb City Bank for $19,500. Also for a failure to decree in favor of appellees as to the so-called Kelso note. Also, because the court denied them relief as to one-half of the notes, amounting to $17,700, allowed in settlement of the land transaction. Also for the admission of improper testimony on the part of appellant.

It is, and must be conceded, that so far as the bill sought to set aside the conveyance of the land by appellees to appellant, and the conveyance of the eighty acres of land by Chauncey W. Broughton in his lifetime to appellee, this court has no jurisdiction for the reason that in each case a freehold is involved. But it is contended by appellees, that although we have no jurisdiction to review the action of the court in refusing to set aside the conveyances from appellees to appellant, we still have the right to inquire into

the *bona fides* of the transaction so far as the notes allowed
in settlement were concerned. The prayer of the bill was
that the deeds be set aside, and that the notes allowed as
part of the purchase price he held invalid, and for an ac-
counting in reference thereto. It seems to us that as these
notes were a part of the real estate purchase, their validity
as well as the validity of the deeds were questions so in-
timately connected with each other, that separate relief as
to either could not well be granted. The transaction must
stand or fall as a whole. Separate relief as to the notes
could not restore the *statu quo*, and place the parties in the
same position they occupied before the deeds were made.
The bill treated the transaction as a whole, and no alterna-
tive relief is asked or prayed for. It is true there is the
usual conclusion containing a prayer for further relief, but
we are of the opinion this was not broad enough to war-
rant the court in decreeing separate relief as to the notes,
after finding the conveyances valid and binding. Not only
the conveyance and the notes, but also the waiver of the
widow's award, was involved in the transaction, and we
think the court did not err in refusing relief as to the notes
when it found the conveyances valid. Whether the court's
finding as to the whole transaction was proper or not, must
be determined by the Supreme Court, if the question shall
come before that tribunal.

As to the Kelso note, the claim is that the deceased in
his lifetime held two notes against Etta D. Kelso, of Long-
mount, Colorado, one for $2,000 and the other for $160,
given for back interest, and that appellant by improper
means and misrepresentations, obtained possession of these
notes and induced Mrs. Kelso to give her in exchange there-
for and in place thereof, a note or notes payable to the
order of appellant, whereby she converted to her own use
so much of the estate which she refused to account for.

The evidence concerning this note transaction is found
mainly in the letters of appellant, put in evidence by ap-
pellees, and, all the evidence considered, we can not say the
court erred in refusing to decree that appellant should

account to the estate for the Kelso notes. She was sworn on this subject in her own behalf and explains the matter not inconsistently with the statements contained in her letters, and even if it be held her testimony was incompetent, her letters must be taken as a whole, and the favorable as well as the unfavorable parts, if any, must be considered together, and when so considered, the evidence would not have warranted the court in finding otherwise than it did as to the Kelso notes.

The most serious questions in the case are as to the propriety of the decree in charging appellant with the Waterman Bank and DeKalb National Bank certificates of deposit on the one hand, and the refusal so to charge her as to the certificates issued by the Barb City Bank on the other; these questions being presented for the consideration of this court by the assignment of errors and cross-errors, filed respectively by appellant and appellees.

Appellant's claim to all these certificates of deposit rests upon the proposition that they were given to her by Chauncey W. Broughton in her lifetime, and were valid and executed gifts prior to his death, while, as we have seen, the claim of appellee is, that her title rests upon fraud, perjury and forgery, it being distinctly charged in the bill as amended that appellant forged the name of her deceased husband to the assignment and instruments of assignment which purport to vest the title in her. This is a most serious charge, and to warrant a decree finding appellant guilty thereof the evidence should be at least clear and satisfactory, and rest upon something definite and certain, and not mere suspicion. A very large amount of evidence has been taken upon this point by the respective parties, which we can not pretend to discuss in detail, although we have read it all and given it the careful and patient examination and consideration which the importance of the case entitles it to receive at our hands. In the main, we can only give our conclusions.

The evidence introduced by appellant to sustain her title to these certificates of deposit was, that on February 9,

1893, her husband executed a paper of which the following is a copy, viz.:

"CARLTON, February 9, 1893.

I, Chauncey W. Broughton, do, this 9th day of February, 1893, give to my wife, Isabella B. Broughton, all my bank certificates of deposit, as her own property.

C. W. BROUGHTON."

" Witnesses :
    E. P. ORR.
    H. H. WANN."

And that on April 17th following he made a further assignment in writing, as follows :

"CARLTON, April 17, 1893.

I, this day give to my wife, Isabella B. Broughton, all my bank certificates deposited since February 9, 1893, as her own personal property, and I transfer them to her.

C. W. BROUGHTON."

" Witnesses :
    E. P. ORR.
    H. H. WANN."

These subscribing witnesses, Orr and Wann, were sworn and examined as to these instruments of assignment, and give in detail the circumstances under which they are alleged to have been executed, relating the conversation which took place and the declarations of deceased in relation thereto, and swear positively that they heard him dictate the contents of the instruments to Mrs. Broughton who wrote them, and that they saw him sign his name thereto, and also saw him indorse his name upon the back of the certificates which bear his indorsement. They detail the circumstances under which they came to be at the home of the deceased on the occasion when the first dated paper was signed, and swear that on the second occasion they came at his request, in pursuance of an arrangement made when they were there the first time. Their testimony certainly bears an air of probability, and either the papers were drawn and signed and the certificates indorsed as they swear, or they have united in concocting, or assisted in fabricating, a story which is wholly untrue, and to maintain which they must have committed willful and corrupt perjury. We fail to find

in the evidence anything which would show a sufficient motive or interest on their part to induce the commission of such a crime simply to aid appellant. It is insisted on the part of appellees that inasmuch as some of the certificates of deposit, which purport to have been assigned by this instrument of February 9, 1893, were not in fact issued until the next day, that the testimony of Orr and Wann and appellant must necessarily be untrue. After this fact was developed in the evidence, Orr and Wann were again examined as to the date of the first occurrence when they signed as witnesses, and they then fixed the date as February 11, 1893. In this they were corroborated by appellant Charles Broughton, Chauncey Broughton, and, to some extent, by Rufus B. Chandler, who testifies that on the 14th of February, when the will was executed, deceased told him that the Saturday before he had given the certificates of deposit to appellant. While this discrepancy as to dates appears at first blush somewhat suspicious, yet it can not be said that it is sufficiently so to overcome the positive sworn testimony of so many witnesses. The important fact after all is, whether the paper was signed by the deceased as sworn to by the witnesses. They might readily be mistaken as to the date, but they certainly could not be mistaken as to the facts of the execution of the papers, which they detail with so much circumstantiality. As we have already said, either the papers were executed as testified to by Orr and Wann, or they have committed deliberate perjury. No other conclusion can reasonably be arrived at.

As to the certificates of deposit issued by the Barb City Bank, amounting to $19,500, the court below found in favor of appellant. Of this amount all but $400 of the certificates were issued and in existence prior to April 17, 1893, the date of the last assignment sworn to by Wann and Orr. These certificates were not indorsed by Mr. Broughton as those on the other banks were. Orr and Wann both testify that deceased said the Barb City Bank certificates did not need indorsing because they were payable to his wife as well as himself. The witness Samuel P. Bradshaw, who was

cashier of the Barb City Bank during the year 1893, testifies that after the certificates were issued to Chauncey B. Broughton, he, Bradshaw, interlined after the word "himself" (which meant Chauncey B. Broughton) the words "or Mrs. B. B. Broughton," and that such interlineation was made at the request of deceased, contained in a letter brought to the witness by Mrs. Chandler, who also delivered to him the certificates at the same time. He was shown the fourteen certificates of deposit issued by the Barb City Bank, and swears that he thinks he interlined in all of them the words "or Mrs. B. B. Broughton," so that they were payable either to deceased or to appellant. But whether this change was made in all the certificates at the same time, or at different times, the witness was not certain. Mrs. Anna B. Chandler testifies that in the winter of 1893, in the early part of February, she was visiting at the home of deceased, and when about to return to her own home in De Kalb, deceased handed her an envelope containing some certificates, and also directions to Mr. Bradshaw what to do with them, and requested her to go the bank and give them to Mr. Bradshaw, which she testifies she did. That the certificates were made payable to C. W. Broughton, and that the order to Mr. Bradshaw was, that he write on the certificates, after the word "himself," the words, "or to Mrs. B. B. Broughton," and that she saw Mr. Bradshaw make the change.

Mr. Bradshaw was cashier of the bank, and he seems to have had no hesitation in acting upon the order brought to him by Mrs. Chandler and signed by Mr. Broughton. All these circumstances strongly tend to show the intention of the deceased to give the certificates of deposit to his wife, and indirectly at least corroborate the witnesses as to the execution of the papers dated February 9th and April 17th, making assignments thereof to her. It may be possible the intention of deceased was to vest the title in his wife for the more convenient distribution of the proceeds among the legatees named in the will, but there is no proof of such intention, nor is that the case made by the bill. So far as

Roberts v. Woods.

the certificates of deposit were concerned, all the efforts of complainants below were devoted to the purpose of showing that the assignments, and the papers evidencing assignments, were forgeries. On this point much testimony was taken, and as there were many papers in evidence, bearing signatures of deceased which were admitted to be genuine, abundant opportunity was afforded for comparison and the application of expert testimony. It would not only be a work of great labor, but perhaps a useless task, to attempt to analyze all the evidence bearing upon this charge of forgery. Upon the one side the testimony of the expert witnesses and that of others who were examined on that subject, tends to cast doubt and suspicion upon the genuineness of the signatures upon which the assignments depend for their validity, while on the other hand the evidence is fully as strong, if not stronger, that the signatures are genuine. It is within the range of common experience and observation, that the genuine signatures of the same person vary greatly according to the circumstances and conditions under which they are written, and experts on handwriting can always point out differences upon which to base an opinion as to genuineness or otherwise. In this case much stress is laid by counsel for appellees on the testimony of the experts Ewell and Tolman, and their well-known reputation no doubt entitles them to great credit, but we are not inclined to the view that it should outweigh the testimony of so many witnesses who were personally acquainted with the handwriting of deceased, and had frequently seen him write, and also the positive testimony of the witnesses who swear they actually saw the deceased write the very signatures in controversy. No motive is perceived why these witnesses should commit willful and deliberate perjury to bolster up and assist the perpetration of another crime in which it is not shown they have any interest. Again, it is a somewhat significant fact, that neither of the appellees, nor Preston Broughton, all of whom were children of the deceased and witnesses in the case, attempted to swear that these assignments were not the genuine signatures of their

father. As to the mental capacity of the deceased and his ability to transact ordinary business at the time of these alleged assignments, and for some time thereafter, we think a clear preponderance of the evidence shows that he was capable and competent. True, his eyesight was poor, but the evidence fails to show that there was any time when he could not write his name if his business required it. Without attempting to sum up the testimony of the several witnesses, or give the evidence in detail, our conclusion is that the charge of forgery is not proven.

While there are many things in the record tending to cast suspicion on the honesty and good faith of the appellant, and leading to the belief she has not dealt fairly in all things with appellees—such, for instance, as her actions with regard to the McCleary note, the pretended sale of the chattel property to John McGirr, who, for $5 paid him by Roberts, the husband of appellant, bought the chattel property on the farm, or pretended to buy it when, in fact, he was acting for appellant and her husband. The loss of the original notes amounting to $17,700, one-half of which was allowed on the purchase price of the land in the arbitration proceeding, also has an appearance of suspicion, yet we can not say that all these things, suspicious though they may be, are sufficient to make out the charge of forgery as to the assignment of the certificates of deposit.

It was formerly the rule in this State, that in a civil case, when it was necessary to establish facts which show a crime, the same degree of proof was required to sustain the action or defense as would be required to procure a conviction under an indictment for the same offense. That is, proof beyond a reasonable doubt. Harbison v. Shook, 41 Ill. 141; Crandall v. Dawson, 1 Gilm. 556; McConnell v. The Del. M. S. Ins. Co. et al., 18 Ill. 228.

In Sprague v. Dodge et al., 48 Ill. 142, it was held that in civil actions, when either party relies upon establishing a criminal offense against the other, the presumption of innocence should only be yielded upon satisfactory evidence of guilt. And although clearer proof would be required in

such case than in one involving no criminality, yet the sufficiency of such proof is to be determined by the jury and need not be of such character as shall satisfy them beyond a reasonable doubt. In the case of Oliver et al. v. Oliver, 110 Ill. 119, the bill sought to set aside a deed on the ground of forgery, and it was held that the charge of forgery was one which the complainant was bound to prove affirmatively by clear and convincing proof before relief could be granted.

The rule, as laid down by Greenleaf on this subject, is as follows:

"To support a special plea in justification, where *crime* is imputed, the same evidence must be adduced as would be necessary to convict the plaintiff upon an indictment for the crime imputed to him; and it is conceived that he would be entitled to the benefit of any reasonable doubts of his guilt, in the minds of the jury, in the same manner as in a criminal trial." 2 Greenl. on Ev. (13th Ed.), Sec. 426.

In the case of Grimes v. Hilliary, 150 Ill. 141, our Supreme Court recognize the doctrine upon this subject laid down in the earlier cases above cited, but a doubt seems to be implied as to whether the rule of these cases is to be adhered to, and as to this question no opinion is expressed.

So far as this State is concerned, therefore, it seems to be still an unsettled question as to whether or not, where a criminal offense is charged in the pleadings in a civil case, it is necessary to prove the charge beyond a reasonable doubt. We think it safe to hold, however, that a mere preponderance of the evidence is insufficient to overcome the presumption of innocence, and that to sustain the charge, the evidence should be clear, convincing and satisfactory.

Applying this rule to the case at bar, we are of the opinion appellees have not established the charge of forgery against appellant. To hold that they have done so, is to convict some seven or eight witnesses, other than appellant, of the further charge of willful and corrupt perjury. This we are unwilling to do upon the evidence as it now stands in the record.

It is insisted by appellees that the court admitted improper testimony in allowing appellant to testify as to certain matters involved in the case, and particularly as to the assignment to her of the certificates of deposit by the deceased. As to the fact of such assignment being made, the transaction being in the lifetime of deceased, and the complainants having sued as legatees and devisees under the will, appellant was, no doubt, incompetent to testify, except as to matters which had been so put into the record by appellees as to render her competent within the exceptions of the statute. As to the subject of the assignment of the certificates, and the alleged gift of them to her by the deceased, appellees saw fit to introduce her statements and declarations, and they thereby became competent evidence in the case, either for or against her as the court might regard them, and as to all matters arising since the death of her husband she was a competent witness. We must presume the court below only considered competent evidence, and we think there is nothing in the record requiring a reversal of the decree on this cross-error assigned by appellee.

Error is assigned by appellant upon that portion of the decree taxing all the costs of the case against her, but the record does not show that an appeal was taken from that part of the decree, and that assignment of error will, therefore, not be considered.

Many matters appearing in the arguments of counsel have not been referred to in this opinion, and could not be discussed without extending it to an unreasonable length, but they have all been carefully considered and given such weight as we deemed them entitled to.

So much of the decree as pertains to the Barb City Bank certificates of deposit will be affirmed, and also so much of the decree as relates to the chattel property which has been acquiesced in by the parties and not appealed from.

That portion of the decree pertaining to the Kelso notes of $2,160 will also be affirmed. They were in possession of appellant at the death of deceased and the proofs do not show they belonged to his estate. The letter of appellant put in evidence by appellees shows the contrary.

So much of the decree as requires appellant to account for the certificates of deposit issued by the Waterman Bank and the DeKalb National Bank for the aggregate sum of $14,680, with interest thereon, as a part of the estate of Chauncey W. Broughton, deceased, is reversed. As to all other matters the decree will be affirmed.

The motion of appellant to strike the cross-errors from the files is denied, but in so far as they may involve a freehold, over which we have no jurisdiction, they have not been considered.

The decree is therefore affirmed in part and reversed in part, as above stated, and the cause will be remanded with directions to the Circuit Court to enter a decree in accordance with the views herein expressed.